UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN RE: AIR CRASH NEAR CLARENCE CENTER, **DECISION AND ORDER**
NEW YORK, ON FEBRUARY 12, 2009, 09-md-2085

This document relates to:
09-CV-961S

## I.  INTRODUCTION

On February 12, 2009, while on final approach to the Buffalo Niagara International Airport, Continental Connection Flight 3407 crashed into a house in Clarence Center, N.Y., killing all 45 passengers, the four-person crew, and one person in the house.  By order entered October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred all then-pending actions concerning the crash of Flight 3407 to this Court for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.  In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 655 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009).  Subsequently-filed actions have also been transferred here.

Presently before this Court is a motion brought by Defendants Colgan Air Inc., Pinnacle Airlines Corp., and Continental Airlines, Inc., to compel proper discovery responses from Plaintiff Xiaojun Pan.  (Docket No. 144.[1])  This Court has reviewed and considered the parties' motion papers and finds oral argument to be unnecessary.  For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## II.  BACKGROUND

Plaintiff's decedent, Shibin Yao ("Yao"), was 37 years old at the time she died in the crash of Flight 3407.  She left her husband, Xiaojun Pan, their three-year-old son, Zhanjun

---

[1]All docket references are to the individual case, 09-CV-961S, unless otherwise noted.

Pan, as well as Yao's mother, Yiya Pang, her father, Kaide Yao, and her sister, Shihui Yao.

Yao and her family are Chinese citizens. Yao began working for PricewaterhouseCoopers LLP ("Pricewaterhouse") in Beijing, China, in 2004, and worked there as a manager until early 2007. In February 2007, Yao began a 24-month secondment in Pricewaterhouse's New York office using an L-1 non-immigrant work visa, which was issued on February 16, 2007, and was due to expire on February 15, 2009. Pricewaterhouse extended Yao's secondment to May 2010 and Yao requested that Pricewaterhouse also complete the process of extending her immigration visa.

Yao and Pan, who also works for Pricewaterhouse, lived in New Jersey during Yao's secondment and were living there at the time of the aircrash. Except for the period April through May 2007 and October through December 2008, Zhanjun remained in China with his grandparents. Yao's parents and her sister live in China. The parties dispute where Yao was domiciled on the date of the aircrash, given her contacts with both China and New Jersey.

Defendants now seek to compel Plaintiff to produce adequate and complete responses to a number of their discovery requests, which will be individually addressed below. Plaintiff maintains that the discovery he has provided is sufficient and that his objections to providing further discovery are proper under the law.

### III. DISCUSSION AND ANALYSIS

**A.    Discovery Standard**

District courts enjoy broad discretion when resolving discovery disputes. That discretion is exercised by determining the relevance of discovery requests, assessing

oppressiveness, and weighing these factors in deciding whether discovery should be compelled.  See Yancey v. Hooten, 180 F.R.D. 203, 207 (D.Conn. 1998).

Discovery in federal court is broad and permissive.  Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense . . . ."  (Emphasis added.)  Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)); see also FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

This relevance standard is "necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  LaForest v. Honeywell Int'l Inc., No. 03-CV-6248, 2004 WL 1498916, at *2 (W.D.N.Y. July 1, 2004) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) and omitting citation); see also Breon v. Coca-Cola Bottling Co. of New England,232 F.R.D. 49, 52 (D.Conn. 2005) ("Relevancy continues to be 'broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party.'") (citations omitted; emphasis in original).

But this permissive standard is not unfettered.  For example, under Rule 26 (b)(2)(C)(I), a court must limit discovery if it finds that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  A court must also limit discovery if it

finds that the burden or expense of the requested discovery outweighs its likely benefit. See Rule 26 (b)(2)(C)(iii).

The party seeking discovery to which it believes it is entitled may seek to compel production under Rule 37 (a). The party resisting discovery bears the burden of specifically demonstrating why the requested discovery — which for documents and things need only be described with "reasonable particularity" under Rule 34 (b)(1)(A) — is objectionable. See Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). Objections must clearly set forth the specifics of each objection and how that objection relates to the discovery being demanded. Id. (citing Roesberg v. Johns-Manville Corp., 85 F.R.D. 292 (E.D.Pa. 1980)). Pat, generic, boilerplate, and non-specific objections will not suffice. Obiajulu, 166 F.R.D. at 295.

**B.    Defendants' Discovery Requests**

Defendants originally set forth their discovery requests through Defendants' Request for Production of Documents and Things and Defendants' First Interrogatories. Plaintiff has produced documents in response to Defendants' requests, but Defendants maintain that further production is necessary in the nine areas discussed below.

**1.    Medical Records**

Defendants seek production of Yao's medical records from 2004 through February 12, 2009, and each claimant's medical records from 2004 through the present. Plaintiff argues that he has already produced Yao's comprehensive medical report from June 2007 and that nothing more is required. He further argues that the claimants' medical records are not relevant. Without elaboration, Plaintiff also maintains that it would be burdensome

to obtain medical records from China.

Yao's medical records are certainly relevant in this wrongful death action and Plaintiff's production of a single report is insufficient. Moreover, the fact that Plaintiff must obtain some documents from China is not unduly burdensome, particularly because Plaintiff is a Chinese citizen and members of Yao's family currently live in China. See Zhao v. United States, No. 06-CV-106S, 2010 WL 4642929, at *4-*5 (W.D.N.Y. Nov. 17, 2010) (ordering production of documents located in China). Plaintiff shall therefore produce responsive documents from 2004 through the date of the accident, along with authorizations for Defendants to seek certified copies, if necessary. See Bonta v. Accor N. Am., Inc., 07-CV-735S, 2010 WL 2869535, at *3 (W.D.N.Y. July 20, 2010) (requiring the plaintiff to provide defendants with authorizations for medical records).

The claimants' medical records from 2004 through the present — including those for Plaintiff and his son[2] — are relevant and discoverable if the claimants intend to pursue their claims for "mental anguish and grief" and "deterioration of physical and/or mental health" resulting from Yao's death. If claimants intend to maintain such claims concerning the impact of Yao's death on their own mental and/or physical health, then they have put their own health at issue and must produce the requested medical records. If not, the medical records are not relevant and need not be disclosed.

**2.    Tax Returns**

Defendants seek written authorizations permitting them to obtain copies of Yao's tax returns, or similar documents issued in another country, for the years 2004 through 2006.

---

[2] Plaintiff has indicated he will produce his son's medical and school records.

Plaintiff does not challenge that Yao's tax returns, as indicators of her financial status, are relevant in determining damages. He further notes that he has produced Yao's 2007, 2008, and 2009 federal and state income tax returns. Defendants' request, however, targets any tax returns or similar documents from 2004 through 2006, which encompasses time Yao spent in China.

Plaintiff has filed an affidavit wherein he states that no tax returns or equivalent documents were filed in China from 2004 through 2006, because none were required. (Affidavit of Xiaojun Pan ("Pan Aff."), Docket No. 158, ¶ 7.) This Court accepts this sworn representation. There being no documents to produce, Defendants' request is denied. To the extent that responsive documents from China or any other country are discovered, Plaintiff is directed to produce them.

### 3. Financial Records and Valuation of Estate

Defendants seek the production of Yao's and the claimants' checking, bank, credit card, debit card, and investment statements, and other records that reflect their personal, family, educational, and business spending, between 2004 and 2009. These records are relevant to Yao's gross income, lost earnings, and financial support of the claimants, all of which are damages issues in this case.

Plaintiff argues that he has provided financial information for himself and Yao for the period covering 2007 through February 2009. Any further information, he argues, is too remote in time, irrelevant, and not material. Defendants maintain that they are entitled to records from China from 2004 to 2006, and that Plaintiff's production has been insufficient, particularly considering that Yao sold more than $1 million in equities in 2009 and transferred nearly $150,000 by wire.

6

This Court is not convinced by Plaintiff's arguments. Given the nature of Plaintiff's claims, Yao's income, earning potential, and financial support of the claimants are relevant and Defendants are therefore entitled to discovery on these issues. Moreover, Defendants are entitled to records from 2004 to 2006, both because it is a reasonable time-frame and because there remains an open issue concerning whether Yao would have returned to China at the end of her secondment. Consequently, this Court grants Defendants' request for production of Yao's and the claimants' checking, bank, credit card, debit card, and investment statements, and any other records that reflect their personal, family, educational, and business spending, between 2004 and 2009.

The claimants' financial records are also relevant because the claimants seek damages for loss of support, loss of consortium, and loss of Yao's services. Examination of claimants' financial records may reveal the degree to which they financially depended on Yao, which is relevant to damages. Plaintiff's bald contention that Defendants' request amounts to a "fishing expedition" is misplaced given the nature of the claimants' claims and the lack of any substantive argument by Plaintiff why this information is irrelevant or too burdensome to produce. Defendants' request for this information is granted.

Finally, Defendants seek a valuation of Yao's estate. Plaintiff objects to this request on the basis that pecuniary loss is measured by a decedent's gross income at the time of death. But Plaintiff is pursuing a loss-of-inheritance claim. Consequently, a valuation of Yao's estate at the time of her death is relevant and necessary for Defendants to defend this claim. Plaintiff shall therefore produce responsive documents.

### 4. Income Records

Defendants seek the production of documents relating to Yao's income for the years 2004 through 2009, including earnings, investments, and other benefits. For the reasons stated above, information related to Yao's income is relevant and properly discoverable and Plaintiff shall produce it.

### 5. Employment Records

Defendants request written authorizations permitting them to obtain copies of Yao's payroll, personnel, and other employment records, between 2004 and 2009. Plaintiff responds that he has produced some documents and requested other responsive documents from Yao's employers in China. In March 2010, Plaintiff's counsel sent authorizations and requests for employment records to Yao's employers in China, without success. That appears to be the only effort undertaken to produce responsive documents. Plaintiff does not argue that the requested documents are irrelevant or unduly burdensome to produce and in fact admits that he never resisted Defendants' request. Accordingly, Defendants' request is granted and Plaintiff shall provide the requested authorizations and redouble his efforts to produce Yao's payroll, personnel, and other employment records from 2004 to 2009.

### 6. Educational Records

Defendants seek copies of Yao's transcripts from any high school, college, or university that she attended. Plaintiff has produced Yao's diploma from York University, Toronto, Canada, where she earned a Master of Business Administration degree, and maintains that this is sufficient for purposes of determining Yao's earning capacity and

ability to financially support her family. Defendants maintain that transcripts should be produced for an accurate assessment of Yao's earning capacity.

In this Court's view, transcripts from Yao's college or university studies are properly discoverable and provide a more accurate assessment of earning capacity than a diploma alone, which does not reflect Yao's level of achievement during the course of her studies. Plaintiff shall therefore provide the college and university transcripts forthwith. Yao's high school records, however, are not instructive on the issue of her earning capacity in light of her higher education and employment, and therefore Defendant's request for high school records and transcripts is denied.

### 7.     Electronic Communications

As noted, the parties dispute where Yao was domiciled on the date of the aircrash. Defendants maintain that Yao was domiciled in China and here temporarily for work purposes; Plaintiff maintains that Yao was domiciled in New Jersey and intended to remain in the United States. This dispute is an important one because it may affect which law governs Plaintiff's claims.

Defendants seek written authorizations permitting them to obtain Yao's electronic communications between 2004 and February 12, 2009, and each claimant's electronic communications from 2004 through the present, including social media accounts, emails, text messages, and instant messages, as they relate to Yao's domicile on February 12, 2009, and each claimant's loss-of-support claims. Plaintiff maintains that Defendants' request is barred by statute, an invasion of privacy, seeks irrelevant information, and is overly broad.

In this Court's view, there can be little debate that the information Defendants seek

from Yao and the claimants is relevant to Yao's domicile at the time of the aircrash, which could be an important choice-of-law issue in this case. Yao's and the claimants' electronic communications may contain evidence relating to Yao's plans about returning to China (or not), plans for the care of her son, travel information, etc. Electronic communications may also contain information concerning Yao's financial support (or not) of the claimants.

Contrary to Plaintiff's arguments, disclosure of electronic communications is not barred by the Stored Communications Act, 18 U.S.C. § 2701, which prohibits unauthorized access to stored electronic communications. See 18 U.S.C. § 2701(a). The SCA does not apply to the user of the electronic communications service himself, nor does it impose civil or criminal liability when action is taken in good faith pursuant to a court order. See 18 U.S.C. § 2701 (c)(2); 18 U.S.C. § 2707 (e)(1). As the duly authorized personal representative of Yao's estate, Plaintiff has possession, control, and authority over Yao's property. See In Re Estate of Napoleon, 2010 WL 2696695, at *6 (N.J. Super.Ct. App. Div. July 7, 2010); N.J. Stat. § 3B:10-30 (2011). Plaintiff is therefore able to secure responsive documents pursuant to a court order and produce them to Defendants.

Moreover, production of electronic communications is not an invasion of Yao's privacy. There is no common law right to privacy in New York, see Romano v. Steelcase, Inc., 907 N.Y.S.2d 650, 655 n.6 (N.Y. Sup. Ct. Suffolk Co. 2010), and any privacy interests generally cease upon death, see Smith v. Long Is. Jewish-Hillside Med. Ctr., 499 N.Y.S.2d 167, 168 (2d Dep't 1986). In addition, Plaintiff has the option of requesting that any responsive documents be produced subject to the Protective Order Regarding Confidential Information that has been issued in this case.

Defendants' request for production of Yao's electronic communications between

2004 and February 12, 2009, and each claimant's electronic communications from 2004 through the present, including social media accounts, emails, text messages, and instant messages, *as they relate to Yao's domicile on February 12, 2009, and each claimant's loss of support claims*, is granted. Defendants' request for written authorizations to obtain electronic communications is denied at this time, subject to renewal if Plaintiff's production is insufficient. This Court notes that Plaintiff has sworn that certain on-line accounts and electronic communications do not exist for himself, Yao, and the claimants, or that such accounts have been searched and do not contain responsive documents. (Pan Aff., ¶¶ 2–6.) This Court accepts those representations as true. Nonetheless, Plaintiff shall endeavor to find any responsive electronic communications that may exist and produce them to Defendants.

### 8. Insurance Records

Defendants seek production of all documents concerning Yao's life, health, and accident insurance policies from 2004 through February 12, 2009, and all documents concerning any rejection of an application Yao made for life, health, or accident insurance, or of any issuance of such insurance at higher than usual premiums, for any reason directly or indirectly related to medical grounds. Plaintiff objects to this request on the basis that it is barred by the "collateral source rule" and seeks information that is irrelevant.

Defendants do not seek information concerning benefits paid by Yao's insurance policies, thus Plaintiff's "collateral source rule" objection is misplaced. Rather, Defendants seek information pertaining to Yao's health in the years preceding the aircrash. Because a health-related rejection by an insurance company could lead to the discovery of

11

admissible evidence concerning Yao's health, it is properly discoverable. This Court notes, however, that Plaintiff states in his affidavit that he is unaware of Yao ever having been denied health or life insurance. (Pan Aff., ¶ 10.) This Court accepts this sworn representation. There being no documents to produce, Defendants' request is denied. To the extent that responsive documents are discovered, Plaintiff is directed to produce them.

### 9. Travel Records

Defendants seek production of Yao's Flight 3407 travel documents, including electronic copies of her itinerary. Plaintiff maintains that he is not in possession of any of Yao's travel documents and Defendants have made no showing that these documents are not already in their possession, either through their own or Pricewaterhouse's records. (Pan Aff., ¶ 11.) Defendants' request is therefore denied.

## IV. CONCLUSION

Defendants' Motion to Compel is granted in part and denied in part, consistent with this decision. The information ordered to be produced is reasonably calculated to lead to the discovery of admissible evidence regarding claims and defenses in this case and production is not unduly burdensome. Plaintiff shall produce responsive documents as ordered herein within 30 days of the entry date of this decision. Defendants' request for fees and costs is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Compel Discovery (Civil (09-CV-961S) Docket No. 144; MDL (09-md-2085) Docket No. 668) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff shall provide responsive documents as ordered herein within 30 days of the entry date of this decision.

FURTHER, that Defendants' request for fees and costs is DENIED.

SO ORDERED.

Dated: December 17, 2011
       Buffalo, New York

                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                Chief Judge
                                          United States District Court