UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AIR CRASH NEAR CLARENCE CENTER, NEW YORK, ON FEBRUARY 12, 2009. | **DECISION AND ORDER** 09-md-2085 |
| | This document relates to: 09-CV-961S |

## I. INTRODUCTION

On February 12, 2009, while on final approach to the Buffalo Niagara International Airport, Continental Connection Flight 3407 crashed into a house in Clarence Center, N.Y., killing all 45 passengers, the four-person crew, and one person in the house. By order entered October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred all then-pending actions concerning the crash of Flight 3407 to this Court for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407. In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 655 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009). Subsequently-filed actions have also been transferred here.

Presently before this Court is Plaintiff Xiaojun Pan's motion for the application of New York law to the issue of compensatory damages. (Docket No. 288.[1]) Defendants Colgan Air, Inc., Pinnacle Airlines Corp., and Continental Airlines, Inc. have also cross-moved for the application of Chinese law to this issue. (Docket No. 295.) This Court has reviewed and considered the parties' motion papers and finds oral argument to be unnecessary. For the reasons discussed below, Plaintiff's motion is granted and Defendants' cross-motion is denied.

---

[1] All docket references are to the civil docket in the instant case, 09-CV-961S, unless otherwise noted.

## II.  DISCUSSION

Plaintiff contends that, pursuant to the relevant choice-of-law rules, New York law applies to the issue of compensatory damages and this state has a strong interest in seeing its law applied in the instant case.  Defendants assert that Plaintiff and decedent, his wife, were legally domiciled in China at the time of the accident, therefore Chinese law should be applied to this damages issue.

Where, as here, a federal court is exercising diversity jurisdiction in a multidistrict litigation, resolution of a conflict of laws issue applies the choice of law rules of the state in which the relevant action was commenced. In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 798 F. Supp. 2d 481, 486 (W.D.N.Y. 2011); see In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979, 644 F.2d 594, 610 (7th Cir. 1981).  This action was commenced in the Southern District of New York, therefore the forum state is New York.  Thus, this Court's task is to determine how New York courts would resolve this issue, even if it were to find a different resolution better or wiser.  In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 798 F. Supp. 2d at 492 (citing In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, No. MDL 1448(RWS), 2006 WL 1288298, *29 (S.D.N.Y. May 9, 2006)).

The New York Court of Appeals has held that "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co., (Stolarz-N.J. Mfrs. Ins. Co.), 81 N.Y.2d 219, 223, 613 N.E.2d 936, 937 (1993); see GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 382 (2d Cir. 2006). The law of New Jersey, where Plaintiff asserts he and decedent were domiciled at the time of the accident, is identical to that of New York with respect to pecuniary damages in a wrongful death action. Compare

N.J.S.A. § 2A:31-5, and Thalman v. Owens-Corning Fiberglas Corp., 290 N.J. Super. Ct. A.D. 676, 683, 676 A.2d 611, 614 (N.J.Super.A.D. 1996), with EPTL § 5-4.3(a), and Milczarski v. Walaszek, 108 A.D.3d 1190, 969 N.Y.S.2d 685 (N.Y.A.D. 4th Dep't 2013). As such, no conflict-of-laws analysis is required if Plaintiff and decedent were in fact legally domiciled in New Jersey at the time of the accident. See Tronlone v. Lac d'Amiante Du Quebec, 297 A.D.2d 528, 528, 747 N.Y.S.2d 79, 80 (N.Y.A.D. 1st Dep't 2002), *aff'd*, 99 N.Y.2d 647 (2003).

If they were domiciliaries of China, however, the parties do not dispute that an actual conflict exists between the laws of New York and China for compensatory damages in a wrongful death action. "[T]he essence of the cause of action for wrongful death in [New York] State is that the plaintiff's reasonable expectancy of future assistance or support by the decedent was frustrated by the decedent's death." Gonzalez v. N.Y.C. Hous. Auth., 77 N.Y.2d 663, 668, 572 N.E.2d 598, 601 (1991). The amount of pecuniary damages recoverable is determined by, among other things, the decedent's financial status, including his or her past and potential future income. See Johnson v. Manhattan & Bronx Surface Tr. Operating Auth., 71 N.Y.2d 198, 204, 519 N.E.2d 326, 328 (1988); see also Gonzalez, 77 N.Y.2d at 668 (damages may be properly calculated, in part, from a decedent's present and future earning potential); Franchell v. Sims, 73 A.D.2d 1, 5-6, 424 N.Y.S.2d 959, 962 (N.Y.A.D. 4th Dep't 1980) (myriad of factors to be considered in damages calculation includes decedent's income and his or her relationship with those claiming pecuniary loss).

In contrast, the parties' respective experts agree that under Chinese law, the equivalent compensatory damages for a wrongful death claim is a "death compensation"

3

award. (Decl. of Jacques deLisle ¶ 31, Docket No. 288-2; Decl. of Cui Jianyuan ¶¶ 19-20, Docket No. 295-9.) This award is calculated based not on a beneficiary's individual loss, but by the average per capita disposable income of urban residents or net income of rural residents in either the forum locality or plaintiff's "domicile or usual place of residence," whichever is higher. (deLisle Decl. ¶¶ 31-33; Cui Decl. ¶¶ 20-35.) The annual average is generally multiplied by a 20 year time period when the decedent was younger than 60 at the time of death. (deLisle Decl. ¶ 31; Cui Decl. ¶ 22.) Thus, although both jurisdictions provide compensation for a wrongful death, there is a material difference in the amount of recovery permissible that would effect the outcome of a trial. See Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998); Simon v. Philips Morris Inc., 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000); cf. Anderson v. SAM Airlines, 939 F. Supp. 167, 173 (E.D.N.Y. 1996) (no conflict in absence of evidence that second jurisdiction would allow a lesser amount of recovery).

To resolve a conflict of laws in a tort action, New York courts apply an 'interests analysis' to determine which jurisdiction has the greatest interest in the litigation. GlobalNet Financial.Com, Inc., 449 F.3d at 384; Cooney v. Osgood Mach., 81 N.Y.2d 66, 72, 612 N.E.2d 277 (1993). In making this determination, courts distinguish "between laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs (such as vicarious liability rules)." Cooney, 81 N.Y.2d at 72; GlobalNet Financial.Com, Inc., 449 F.3d at 384. Significant to either determination is the locus of the tort and the domiciles of the parties; however, where "the conflict involves allocation of losses, the site of the tort is less important, and the parties' domiciles are more important." GlobalNet Financial.Com, Inc., 449 F.3d at 384-85; Cooney, 81 N.Y.2d at 72 (citing Schultz

4

v. Boy Scouts, 65 N.Y.2d 180, 197-99, 480 N.E.2d 679 (1985)).

The New York Court of Appeals refined the interest analysis in loss allocation cases in Neumeier v. Kuehner "in order to assure a greater degree of predictability and uniformity." Edwards v. Erie Coach Lines Co., 17 N.Y.3d 306, 320, 952 N.E.2d 1033 (2011) (citing Neumeier, 31 N.Y.2d 121, 127, 286 N.E.2d 454, 457 (1972)). There, the Court of Appeals approved a three-rule framework for resolving conflicts involving guest statutes governing automobile accidents, "which by definition allocate losses after the tort occurs rather than regulate primary conduct." Edwards, 17 N.Y.3d at 321 (citing Neumeier, 31 N.Y.2d at 128)). "Under the first Neumeier rule, when the driver and passenger are domiciled in the same state, and the vehicle is registered there, the law of their shared jurisdiction controls." Edwards, 17 N.Y.3d at 321 (citing Neumeier, 31 N.Y.2d at 128). "The second Neumeier principle operates to protect a defendant from exposure to liability under the law of the plaintiff's domicile where the conduct occurred in the defendant's state of domicile, and conversely, to prevent an out-of-state defendant from avoiding liability imposed under the laws of the plaintiff's state of domicile where the injury occurred in that state." Shaw v. Coach, 82 A.D.3d 98, 101-102, 918 N.Y.S.2d 120, 124 (N.Y.A.D. 2d Dep't 2011); see Edwards, 17 N.Y.3d at 321; Neumeier, 31 N.Y.2d at 128.

The third Neumeier rule applies in all other situations where the parties are domiciled in separate jurisdictions:

> [W]hen the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

Neumeier, 31 N.Y.2d at 128 (citation omitted). New York courts "have routinely applied the Neumeier framework to conflicts in loss-allocation situations not involving guest statutes." Edwards, 17 N.Y.3d at 322 (citing Schultz, 65 N.Y.2d 189 (considering doctrine of charitable immunity conflict)); Burnett v. Columbus McKinnon Corp., 69 A.D.3d 58, 60-61, 887 N.Y.S.2d 405, 408-9 (N.Y.A.D. 4th Dep't 2009) (conflicting comparative negligence approaches); Zatuchny v. Doe, 34 A.D.3d 398, 825 N.Y.S.2d 458, 459 (N.Y.A.D. 1st Dept. 2006) (vicarious liability), *appeal withdrawn*, 9 N.Y.3d 959 (2007).

The parties do not dispute that the compensatory damages laws at issue involve loss allocation or that the present case falls within the split-domicile scenario of the third Neumeier rule. (Pl's Mem of Law at 5, Docket No. 288-5; Defs' Mem of Law at 18, Docket No. 296 (filed under seal).) Further, this Court has already ruled that New York constitutes the locus of the tort in this case: "'When the defendant's misconduct and the plaintiff's injury occur in different jurisdictions, the place of the tort is the jurisdiction where 'the last event necessary' to make the defendant liable occurred.' The 'last event necessary in this case – the crash of Flight 3407 – obviously occurred in New York." In re Air Crash near Clarence Center, New York, on February 12, 2009, 798 F. Supp. 2d at 491 (internal citations omitted) (quoting In re Sept. 11th Litig., 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007)); see Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 195, 480 N.E.2d 679, 682-83 (1985) (although misconduct occurred in New York, New Jersey was the locus of the tort because that was where the plaintiffs' injuries occurred); cf. Pescatore v. Pan American World Airways, 97 F.3d 1, 13-14 (2d Cir. 1996) (finding Scotland, the location of the airplane crash, not to be the locus of the tort where the last event necessary to render defendant liable occurred in Germany). Thus, New York law will apply unless

Defendants can establish that its displacement in favor of Chinese law "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." Neumeier, 31 N.Y.2d at 128-29 (placing burden on party asserting exception applies); see Zatuchny, 34 A.D.3d at 398 (same); Cunningham v. Williams, 28 A.D.3d 1211, 1212, 814 N.Y.S.2d 467, 469 (N.Y.A.D. 4th Dep't 2006) (same); Bodea v. Trans Nat Express, Inc., 286 A.D.2d 5, 11, 731 N.Y.S.2d 113, 117 (N.Y.A.D. 4th Dep't 2001) (same).

Plaintiff argues that the New York Court of Appeals' 2011 decision in Edwards strongly supports the application of New York law in the present matter. (Pl's Mem of Law at 11-15.) Edwards involved a wrongful death and personal injury action resulting from a crash in New York between a charter bus and a tractor-trailer. 17 N.Y.3d at 318, 325. The injured and deceased bus passengers were Ontario domiciliaries, as were the defendant bus driver, his employer, and the company that leased the bus. Id. at 325. The tractor-trailer defendants, including the driver, his employer, and the companies that hired the trailer, were Pennsylvania domiciliaries. Id. With respect to the plaintiffs' claims against the bus defendants, Ontario's compensatory damages cap was applied based on the parties' shared domicile under the first Neumeier rule. Id. at 329. In a separate analysis, however, the court rejected the Pennsylvanian defendants' argument that the exception to the third Neureimer rule should be applied to permit the application of the Ontario cap to the claims asserted against them as well. The court stated:

> [T]he third rule establishes the place of the tort – here, New York – as the "normally applicable" choice in a conflicts situation such as this one, where the domicile of plaintiffs, the domicile of the trailer defendants and the place of the tort are different. Initially, the fact that the trailer defendants declined to advocate for Pennsylvania law does not permit them to take advantage of

> the Ontario cap. To rule otherwise would only encourage a kind of forum shopping.

Edwards, 17 N.Y.3d at 330. The court declined to apply the exception to this normally applicable rule because:

> there was no cause to contemplate a jurisdiction other than New York, the place where the conduct causing injuries and the injuries themselves occurred. The trailer defendants did not ask Supreme Court to consider the law of their domicile, Pennsylvania, and they had no contacts whatsoever with Ontario other than the happenstance that the plaintiffs and the bus defendants were domiciled there.

Id. at 331.

Defendants argue that Edwards is distinguishable because that case involved an automobile accident, therefore the entirety of the tortious conduct occurred within New York. (Defs' Mem of Law at 27 n. 12.) In contrast, Defendants argue, this Court has already found in the instant case that the fact the crash occurred in New York was largely fortuitous and "much of the causative misconduct alleged by Plaintiff . . . occurred outside New York." (Defs' Mem of Law at 28-30); see In re Air Crash near Clarence Center, New York, on February 12, 2009, 798 F. Supp. 2d at 489. In that decision, however, this Court went on to expressly conclude that "the fortuitousness of the aircrash alone does not necessarily warrant departure from the rule of *lex loci delicti*." In re Air Crash near Clarence Center, New York, on February 12, 2009, 798 F. Supp. 2d at 489. It was further determined that there were significant allegations of misconduct within New York, including "all of the operational errors and omissions that Plaintiffs contend warrant the imposition of punitive damages." Id. at 491.

Further, as noted above, this Court previously concluded that New York was the locus of the tort in the instant case. Compare Id. at 491, with Pescatore, 97 F.3d at 13-14

(declining to apply law of jurisdiction of airplane crash because it was not the same as the locus of the tort), and Datskow v. Teledyne Cont'l Motors Aircraft Prods., 807 F. Supp. 941, 943-44 (W.D.N.Y. 1992) (same). Defendants correctly assert that a conflict of conduct-regulating laws, specifically punitive damages, was at issue in this prior decision. Contrary to Defendants' contention, however, the locus of the tort is not irrelevant to a loss allocation analysis pursuant to the Neumeier rules. (Defs' Reply Mem of Law at 6-7.) Its relevance to the analysis is simply different. In a conflict of conduct-regulating laws, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." In re Air Crash near Clarence Center, New York, on February 12, 2009, 798 F. Supp. 2d at 488. In contrast, the locus of the tort is utilized in the third Neumeier rule as a neutral deciding factor because the parties' individual domiciles have roughly equal interests in asserting their loss allocation rules to their own domiciliaries. Cooney, 81 N.Y.2d at 74; Bodea, 286 A.D.2d. at 12. The locus is therefore used "as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." Cooney, 81 N.Y.2d at 74; see Anderson, 939 F. Supp. at 173.

Thus, the use of the locus of the tort in a loss allocation conflict analysis does not run afoul of the general rule that where "the conflict involves allocation of losses, the site of the tort is less important, and the parties' domiciles are more important." GlobalNet Financial.Com, Inc., 449 F.3d at 384-85; Cooney, 81 N.Y.2d at 72. Nor has its use as a neutral factor been eroded by more recent cases, as asserted by Defendants. Initially, the argument that the exception to the *lex loci delicti* rule must apply in every aviation wrongful death case in favor of the law of decedent's beneficiaries' domiciles has already been

9

rejected in this Circuit. See O'Rourke v. Eastern Air Lines, Inc., 730 F.2d 842, 849 (2d Cir. 1984), *abrogated on other grounds by* Salve Regina Coll. v. Russell, 499 U.S. 225, 230 (1991); see In re Air Crash at Belle Harbor, New York on November 12, 2001, 2006 WL 1288298 at *29; In re Air Crash near Clarence Center, New York, on February 12, 2009, 798 F. Supp. 2d at 489.

Further, although the Second Circuit stated in AroChem International, Inc. v. Buirkle that, "in the so-called 'split-domicile' cases, the law of the domicile of one of the parties ought to apply," Plaintiff correctly points out that this generalized statement was dicta. 968 F.2d 266, 270 (2d Cir. 1992). There, the Court did not analyze a loss allocation conflict, but considered only a conflict in conduct-regulating laws. Id. Further, to interpret AroChem as precluding consideration of the locus of the tort in all loss allocation cases would be to reject the third Neumeier rule altogether. There is no basis in New York case law to do so. See In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 298 F. Supp. 2d at 492 (resolution depends on how New York state would apply its conflict-of-laws rules); In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, 2006 WL 1288298, at *29 (same). Indeed, in support of its statement, the Court in AroChem relied on Neumeier's application of the "Ontario guest statute to bar an Ontario plaintiff's action against a New York driver for injuries sustained in an Ontario automobile accident." 968 F.2d at 270 (citing Neumeier, 31 N.Y.2d at 125-26). There, however, Ontario's law was less favorable to its own domiciliary than that of the defendant's domicile, therefore the New York Court of Appeals applied Ontario law pursuant to the third Neumeier rule *specifically because it was the place of the automobile accident*. 31 N.Y.2d at 128-29. The Court of Appeals held that to deviate from the rule of *lex loci delicti* in that case would impair the smooth working of the

10

multi-state system by "allowing a party to select a forum which could give him a larger recovery than the court of his own domicile." Id. at 129; see also Burnett v. Columbus McKinnon Corp., 69 A.D.3d 58, 61-63, 887 N.Y.S.2d 405, 408-10 (N.Y.A.D. 4th Dep't 2009).

As noted above, Edwards makes explicitly clear that this principle equally applies to any defendants seeking to apply the law of a plaintiff's domicile in order to limit the amount of any recovery against them. 17 N.Y.2d at 330-31; see also Brewster v. Baltimore & Ohio R. Co., 185 A.D.2d 653, 654, 585 N.Y.S.2d 647, 648-9 (N.Y.A.D. 4th Dep't 1992). Such is the case here, where Defendants are not requesting that this Court weigh China's interest in the litigation against that of their own domiciles. Instead, as in Edwards, Defendants are requesting that this Court apply the law of a jurisdiction with which "they had no contacts whatsoever . . . other than the happenstance that plaintiffs . . . were domiciled there." 17 N.Y.3d at 331. Thus, to rule that Chinese law applies in the instant case would be to permit exactly the type of forum shopping that New York conflict analysis has been structured to avoid.

Finally, the facts of this case do not warrant application of the exception to the third Neumeier rule:

> While New York employs 'interest analysis' rather than 'grouping of contacts,' the number and intensity of contacts is relevant when considering whether to deviate from *lex loci deliciti* under the third Neumeier rule – i.e., in determining whether even to analyze if displacing this 'normally applicable' choice would 'advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

Edwards, 17 N.Y.3d at 331 (quoting Neumeier, 31 N.Y.2d at 128); Walker v. Young Life Saranac Village, No. 8:10-CV-1578 (GTS/CFH), 2012 WL 5880682, *12 (N.D.N.Y. Nov.

12, 2012) (number and intensity of contacts is particularly relevant in determining whether exception applies).

Here, because there are significant contacts evidencing the parties' purposeful association with New York, there is no reason to displace the normally applicable rule. Edwards, 17 N.Y.3d at 331; see also Burnett, 69 A.D.3d at 61-63 (no reason to apply exception to third Neumeier rule where Plaintiff purposely associated himself with locus state). Although this Court previously recognized that some of the alleged misconduct occurred outside New York, that same decision also recognized Defendants' conduct in this state:

> For example, Colgan interviewed and tested [Captain Marvin] Renslow in New York. Colgan does business in New York, conducts pilot interviews and training in New York, maintains bases at LaGuardia and Albany airports in New York, schedules regular flights to and from New York, and operates its primary Q400 maintenance base in Albany, New York. In addition, the Q400 aircraft operating as Flight 3407 had its last pre-crash maintenance check in New York on the day of the crash, including line checks on the ice detector probes and de-ice boots.

In re Air Crash near Clarence Center, New York, on February 12, 2009, 798 F. Supp. 2d at 491 (internal citations omitted). Similarly, Plaintiff and decedent both worked in New York City for approximately two years prior to the crash. (Decl. of Jonathan C. Reiter, Esq. ¶¶ 3, 8, 12, Exs. 8-9, 15; Docket No. 288-1.) Further, "the interrelationship of the parties was centered in New York" inasmuch as Flight 3407 was intended to land in Buffalo, New York. Phelan v. Budget Rent A Car Sys., 267 A.D.2d 654, 655, 699 N.Y.S.2d 568 (N.Y.A.D. 3d Dep't 1999). In contrast, the only contact with China alleged is that Plaintiff and decedent, although residents of New York and New Jersey for over two years, were legally domiciled there. (Pl's Dep at 35, 41-43, Ex. C to Decl. of Jonathan E. DeMay, Esq.,

Docket No. 295-2); see Edwards, 17 N.Y.3d at 331. Accordingly, whereas the application of New York law is not likely to take any party by surprise, the application of Chinese law at Defendants' behest will likely "impair . . . the smooth working of the multi-state system and produce great uncertainty for litigants by sanctioning forum shopping." Neumeier, 31 N.Y.2d at 129 (internal brackets and quotation marks removed); see Edwards, 17 N.Y.3d at 331; Burnett, 69 A.D.3d at 63; Phelan, 267 A.D.2d at 655; Brewster, 185 A.D.2d at 653.

### III. CONCLUSION

Even assuming arguendo that Plaintiff and decedent were domiciliaries of China at the time of the crash, the law of New York state, as the locus of the tort, applies under the relevant choice-of-law rules. Plaintiff's motion is therefore granted and Defendants' cross-motion is denied.

### IV. ORDERS

IT HEREBY IS ORDERED that Plaintiff's motion for a declaration that New York law applies to the issue of compensatory damages (Docket No. 288, 09-CV-961) is GRANTED;

FURTHER, that Defendants' cross-motion for the application of Chinese law to the issue of damages (Docket No. 295, 09-CV-961) is DENIED.

SO ORDERED.

Dated: November 19, 2013
       Buffalo, New York

                                         /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                             Chief Judge
                                      United States District Court